SLOVAK, Appellant and Cross–Appellee; National
Mutual Insurance Company, Appellant,

v.

ADAMS, Appellee and Cross–Appellant, et al.

[Cite as *Slovak v. Adams* (2001), 141 Ohio App.3d 838.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–00–1110.

Decided March 16, 2001.

---

*Matthew W. Chapel, Timothy C. James, Mark P. Seitzinger* and *Shannon J. Dedmon,* for appellant.

*Peter N. Lavalette,* for appellee.

KNEPPER, Judge.

This is an appeal from the judgment of the Lucas County Court of Common Pleas that granted appellee, Marv Adams, d.b.a. Marv Adams Insurance ("Adams"), summary judgment against appellants, Nancy Slovak and the National Mutual Insurance Company ("National Mutual"). For the reasons that follow, we affirm the judgment of the trial court.

Appellants raise the following as their assignments of error:

"APPELLANTS' FIRST ASSIGNMENT OF ERROR

"The trial court erred in granting summary judgment in favor of Marv Adams d/b/a Marv Adams Insurance because the trial court should have found that Marv Adams either had a fiduciary obligation to notify Nancy Slovak of any changes in her insurance coverage resulting from changes in his agency or that genuine issues of material fact exist as to whether Marv Adams had a fiduciary duty to notify Nancy Slovak of changes in her coverage resulting from changes in his agency.

"APPELLANTS' SECOND ASSIGNMENT OF ERROR

"The trial court erred in granting summary judgment in favor of Marv Adams d/b/a Marv Adams Insurance because the record demonstrates that Marv Adams either had a duty to inform Nancy Slovak that her homeowner's insurance coverage would not renew on December 7, 1997, or, that there are genuine issues of material fact that Marv Adams had a duty to notify Nancy Slovak that her homeowner's insurance coverage would not renew on December 7, 1997.

"APPELLANTS' THIRD ASSIGNMENT OF ERROR

"The trial court erred in granting summary judgment in favor of Marv Adams d/b/a Marv Adams Insurance on National Mutual's claims for indemnification because Marv Adams breached his fiduciary and common law duty to notify Nancy Slovak that her homeowners insurance coverage would not renew on December 7, 1997, or there are genuine issues of material fact as to whether Adams breached his fiduciary and common law duties to notify Nancy Slovak that her homeowners coverage would not renew on December 7, 1997."

Adams also filed the following cross-assignment of error:

"The trial court erred in denying defendant/cross-appellant/appellee's motion to strike affidavit of appellants'/cross-appellees' expert witness Herbert Wolman, for the reasons that Wolman's affidavit testimony fails the evidentiary requirements of Ohio Civil Rules and Rules of Evidence."

## STATEMENT OF FACTS

The undisputed pertinent facts are as follows. Slovak initially contacted Adams and procured automobile and renter's insurance with National Mutual through Adams in August 1993. Subsequently, in 1994, Slovak purchased a house and contacted Adams for homeowner's insurance. Slovak had homeowner's coverage through National Mutual from 1994 until National Mutual terminated her policy on December 7, 1997. Slovak's policy was not renewed due to a contractual change between Adams and National Mutual.[1] Normally, the policy would automatically renew. Slovak attested that she never received notice of the nonrenewal and was unaware that National Mutual was canceling her homeowner's policy. No replacement insurance was ever procured. On February 19, 1998, Slovak suffered a fire in her home. Because of the policy's nonrenewal, Slovak was denied coverage for the fire. On June 19, 1998, Slovak sued Adams and National Mutual for her losses.

National Mutual filed a cross-claim against Adams for indemnification and contribution in the event that Slovak recovered any judgment against National Mutual. On April 15, 1999, Slovak settled with and dismissed her claim against National Mutual. Slovak then assigned her claims against Adams to National Mutual. On May 10, 1999, Slovak and National Mutual filed an agreed entry allowing National Mutual to become a party plaintiff, along with Slovak, against Adams, and substituting National Mutual's counsel for that of Slovak's.

In their second amended complaint, filed June 11, 1999, appellants claimed that Adams was negligent in exercising his duties as Slovak's insurance agent and breached his fiduciary duty to Slovak. Appellants claimed that Adams "had a duty to exercise good faith and reasonable diligence in procuring insurance coverage for Ms. Slovak as well as a duty to exercise reasonable care in advising Ms. Slovak regarding insurance coverage." Appellants asserted that Slovak relied on Adams to inform her of any and all material matters that would affect insurance coverage upon her house and personal property, and that Adams knew of this reliance. Appellants argued that Adams breached his duty to Slovak by failing to notify her that her homeowner's coverage was being canceled and by failing to exercise reasonable diligence in procuring replacement homeowner's insurance. Appellants also sought indemnification for all sums paid by National Mutual to Slovak that were related to the fire at her residence.

On November 12, 1999, Adams filed a motion for summary judgment. Adams argued that he had no duty to advise Slovak of the cancellation of her policy and

---

1. Adams had breached his agency agreement with National Mutual and National Mutual terminated its contract with Adams in April 1997. Homeowner's policies already in effect continued until the termination dates of the policies.

had no duty to contact her regarding replacement coverage. Rather, Adams argued that he only had a duty to exercise good faith in obtaining those policies of insurance that Slovak requested, and in providing advice to her, which he did. Adams, in fact, argued that Slovak had a duty to examine the coverage provided in her policy and that she was charged with knowledge concerning the expiration of the policy period, which she neglected.

Adams additionally asserted that he was National Mutual's fiduciary, not Slovak's, and that National Mutual, not Adams, was obligated to transmit all communications to Slovak and provide copies of such to Adams. Adams also asserted that National Mutual billed Slovak directly and that Slovak paid her premiums directly to National Mutual. With respect to National Mutual's communications with Slovak, Adams asserted that he received copies of all correspondence sent to Slovak but that she never relied on Adams to confirm her receipt of any such correspondence from National Mutual. On or about October 23, 1997, when Adams received his "Agent's Copy" of National Mutual's notice of nonrenewal of Slovak's homeowner's policy, Adams believed that Slovak also received her copy. Adams additionally asserted that he provided routine service to Slovak as her insurance agent and that Slovak never relied on Adams in a fiduciary capacity. Moreover, he never offered advice regarding coverage; rather, he merely provided Slovak with the coverage she requested. According to Adams, he was unable to sell Slovak other insurance when her policy did not renew because he did not have any agency relationship with any other carrier to sell a homeowner's policy.

Finally, Adams argued that National Mutual's claims for indemnification were barred because neither Adams nor National Mutual was responsible for Slovak's loss. Because National Mutual satisfied its duty to mail Slovak her "Notice of Non Renewal," and because Adams had no such duty, National Mutual had no basis for indemnification against Adams.

Appellants responded that Adams knew that Slovak desired homeowner's coverage and that Slovak relied upon him for such. Appellants also argued that Adams knew or should have known that Slovak's homeowner's coverage was about to or had expired and, therefore, Adams breached his duty to exercise good faith, reasonable diligence, and reasonable care in dealing with Slovak when he failed to notify her of the expiration of her policy and when he failed to suggest replacement coverage to ensure continued coverage, a service Slovak relied upon.

Appellants also argued that Adams assumed a fiduciary duty to inform Slovak of any changes affecting her homeowner's coverage and to offer replacement coverage. To establish that a fiduciary relationship existed, appellants relied on a telephone conversation in the fall of 1997, wherein Slovak contacted Adams regarding automobile coverage and Adams mentioned in the course of the

conversation that some changes would be occurring in his agency. In this conversation, Slovak attested that she sought assurance from Adams that he would inform her if her insurance coverages would be affected by his agency's changes. According to Slovak, Adams responded that he would inform her if any changes he made affected her insurance coverage. As such, appellants argued that Adams assumed a fiduciary duty to Slovak to inform her of any policy changes, which he did not do.

Several replies were filed by both parties. Adams also filed a motion to strike the affidavit of Herbert Wolman, an independent insurance agent in Columbus, Ohio, who testified on appellants' behalf.

The trial court filed its opinion and judgment entry granting summary judgment on March 8, 2000. With respect to appellants' negligence claim, the trial court held that Adams had no duty to notify Slovak that National Mutual was not renewing her homeowner's insurance because it was National Mutual's, not Adams's, duty to notify Slovak, and because National Mutual undertook its duty to notify Slovak when it mailed her a notice of nonrenewal on October 23, 1997.

With respect to appellants' argument alleging breach of a fiduciary duty, the trial court held that no evidence was presented to show that Slovak placed special trust in Adams. The trial court noted that Slovak initiated the relationship with Adams and kept him informed of changes that might affect her coverage. The trial court also noted that Slovak requested Adams to keep her informed in the event that changes in his agency would affect her, but that such a conversation demonstrated nothing more than an ordinary business relationship. The trial court held that the record failed to establish a relationship of special trust with Slovak and, as such, no fiduciary duty could have been breached.

Having found that National Mutual failed to prove negligence on the part of Adams, or that a fiduciary relationship existed, the trial court also granted summary judgment as to National Mutual's claim for indemnification. The trial court additionally denied Adams's motion to strike the affidavit of Wolman.

## ANALYSIS

This court notes at the outset that in reviewing a motion for summary judgment, we must apply the same standard as does the trial court. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198, 199–200. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).

In their first and second assignments of error, appellants argue that the trial court erred in finding that no genuine issue of material fact existed and that summary judgment should have been granted with respect to whether Adams had a fiduciary duty to inform Slovak that her homeowner's coverage would not renew and to find her suitable replacement coverage, and whether Adams was negligent and breached his duty to so inform her. For the sake of clarity, we will take these assignments of error in reverse order.

## Negligence

With respect to their negligence action, appellants argue that because Adams was an independent insurance agent, he retained the "primary ownership interest and pecuniary interest" in Slovak's policies. Appellants assert that because Adams had this interest and, therefore, could have found Slovak replacement coverage with another insurance company upon the termination of her coverage with National Mutual, Adams owed Slovak a duty of reasonable care to exercise good faith and reasonable diligence in undertaking to acquire replacement coverage for Slovak. Appellants argue that this duty arose particularly in light of the fact that Slovak's insurance coverage was being canceled due to Adams's breach of his agency agreement with National Mutual, and through no fault of Slovak.

First, we find that Adams had no duty to separately notify Slovak of the nonrenewal of her policy. Adams had no statutory obligation to notify Slovak of such. Additionally, the 1980 agency agreement between Adams and National Mutual stated that National Mutual was responsible for notifying Slovak and Adams of its intention not to renew Slovak's policy:

"Notices of intention not to renew policies will be sent to insured and the agent in sufficient time to comply with State law or policy requirements. Company notice to the policyholder regarding non-renewal shall make no reference to the reason for termination."

Moreover, Slovak's own policy stated that National Mutual would notify Slovak in the event of nonrenewal:

"**6. Nonrenewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice."

Accordingly, we find that appellants failed to establish that Adams owed Slovak a duty, additional to that of National Mutual's, to notify her of the nonrenewal of her policy. We make this finding particularly in light of the fact that Adams was sent a copy of the notice of nonrenewal allegedly sent to Slovak and, as such,

Adams was operating under the impression that Slovak had received adequate notice of nonrenewal from National Mutual.

Second, we find that Adams had no continuing duty to acquire insurance coverage for Slovak upon the nonrenewal of her original policy. An insurance agent's duty to his client is to exercise good faith and reasonable diligence in undertaking to acquire insurance coverage. *Damon's Missouri, Inc. v. Davis* (1992), 63 Ohio St.3d 605, 609, 590 N.E.2d 254, 258, fn. 2, citing *First Catholic Slovak v. Buckeye Union Ins. Co.* (1986), 27 Ohio App.3d 169, 170, 27 OBR 202, 203–204, 499 N.E.2d 1303, 1305–1306. Adams satisfied that duty when he procured homeowner's insurance for Slovak in 1994. Nothing in Slovak's policy creates a duty in Adams to acquire replacement coverage for Slovak upon the nonrenewal of her policy. There is also no statutory requirement that Adams do so. Moreover, Adams was operating under the assumption that Slovak received the notice of nonrenewal that National Mutual sent in October 1997, which stated:

"REASON(S) FOR NON–RENEWAL: Agent no longer represents the company. ***Please contact your agent to continue coverage.***" (Emphasis added.)

As such, according to the notice of nonrenewal, Slovak had the responsibility of contacting Adams if she desired him to procure additional or replacement coverage.

Appellants offered the affidavit of Herbert Wolman in support of their motion for summary judgment. Wolman was a licensed independent insurance agent who reviewed the present matter. Wolman stated in his affidavit:

"It is my professional opinion that a reasonable independent insurance agent, faced with a situation where the insurance policies of all of the insureds which he has placed with a particular carrier will not renew, should notify the insureds and inform them that their particular policies of insurance will not be renewed and they will no longer have the particular coverage. Moreover, the reasonable insurance agent will encourage the insureds to obtain replacement coverage and, in most circumstances, offer to assist them in finding replacement insurance coverage either through a different insurance carrier, or, if that coverage is not available, through the efforts of another agent."

We find that Wolman's testimony does not create a question of fact concerning Adams's duty to Slovak. As stated above, Adams had no contractual or statutory duty to notify Slovak and, according to Adams, he believed that she received the required notice from National Mutual. Additionally, Adams had no legally established duty to seek replacement coverage for Slovak absent her request for him to do so. See *Damon's Missouri, supra.* Moreover, "a person has a duty to examine the coverage provided and is charged with knowledge of

the contents of her own insurance policies." *Craggett v. Adell Ins. Agency* (1993), 92 Ohio App.3d 443, 453, 635 N.E.2d 1326, 1332, citing, *First Catholic, supra.* Slovak should have known that her homeowner's insurance was due for renewal in December 1997 and that she had paid no premium for renewal.

Accordingly, we find that Adams had no duty to notify Slovak of the nonrenewal of her policy and had no duty to unilaterally find her replacement coverage upon her policy's nonrenewal. Therefore, we find no genuine issues of material fact and find that Adams is entitled to summary judgment as a matter of law on appellants' negligence claim. We find appellants' second assignment of error not well taken.

## Fiduciary Duty

As we found above, in the ordinary business relationship between agent and insured, Adams had no duty to notify Slovak of her policy's cancellation or to provide her replacement coverage; therefore, Adams arguably would be liable to Slovak only in the event that a fiduciary relationship existed between Slovak and Adams whereby Slovak relied on Adams to personally notify her of the cancellation of her policy or to unilaterally acquire replacement coverage for her.

Ordinarily, the relationship between an insured and the agent that sells the insurance is, without proof of more, an ordinary business relationship, not a fiduciary one.[2] *Craggett,* 92 Ohio App.3d at 452, 635 N.E.2d at 1332. "A 'fiduciary relationship' is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Stone v. Davis* (1981), 66 Ohio St.2d 74, 78, 20 O.O.3d 64, 66–67, 419 N.E.2d 1094, 1097–1098, citing *In re Termination of Employment* (1974), 40 Ohio St.2d 107, 115, 69 O.O.2d 512, 517, 321 N.E.2d 603, 609. A fiduciary's role may be assumed by formal appointment or may arise from a more informal confidential relationship, wherein " ' "one person comes to rely on and trust another in his important affairs and the relations there involved are not necessarily legal, but may be moral, social, domestic, or merely personal. * * *" *Indermill v. United Savings* (1982), 5 Ohio App.3d 243, 245, 5 OBR 530, 532, 451 N.E.2d 538, 540, ' " *Cragett,* 92 Ohio App.3d at 451, 635 N.E.2d at 1331, quoting *Applegate v. Fund for Constitutional Govt.* (1990), 70 Ohio App.3d 813, 816–817, 592 N.E.2d 878, 881.

---

**2.** "While the law has recognized a public interest in fostering certain professional relationships, such as the doctor-patient and attorney-client relationships, it has not recognized the insurance agent-client relationship to be of similar importance." *Nielsen Enterprises, Inc. v. Ins. Unlimited Agency, Inc.* (May 8, 1986), Franklin App. No. 85AP–781, unreported, 1986 WL 5411.

Such a confidential relationship cannot be unilateral, both parties must understand that a special trust or confidence has been reposed. *Craggett* at 451, 635 N.E.2d at 1331–1332.

Appellants argue that a fiduciary relationship arose between Slovak and Adams because Slovak placed special trust in Adams to inform her if his agency changes would affect her insurance coverage. Slovak testified that Adams informed her as follows during a telephone conversation concerning her automobile insurance coverage:

"Q. Was there anything else Mr. Adams said? * * *

"A. He had said at one point, whether it was this phone call or the previous one, that there may be some changes in his agency.

"* * *

"Q. Okay, so Mr. Adams at some point in the fall of 1997 * * * said to you that there may be some changes in his agency?

"A. He said, 'I might be making some changes.' I responded, 'Well, you'll let me know if it affects me,' and he said, 'Don't worry, if I make any changes, I'll call you.'"

Regarding this conversation, Adams testified that he mentioned that he would be making some changes with his agency to Slovak because he "was in the process of selling [his] building." Adams did not specifically explain to Slovak the nature of his changes. As it turned out, however, when he sold the building, he obtained a lease from the new owner and never left his office.

Clearly, even if Slovak believed, based upon this telephone conversation, that Adams would undertake the responsibility of personally informing her regarding the nonrenewal of her policy or would unilaterally acquire replacement coverage for her, there is absolutely no evidence that Adams understood that he was undertaking such duties. A fiduciary relationship cannot be unilateral: both Slovak and Adams must have understood that a special trust or confidence had been reposed. See *Craggett* at 451, 635 N.E.2d at 1331–1332. Moreover, we note that Adams was never in a position to make insurance decisions for Slovak. Slovak would contact Adams for her insurance needs and he would acquire the requested coverage.

Accordingly, we find that appellants failed to establish that a relationship of special confidence and trust was created between Slovak and Adams that resulted in a position of superiority or influence by Adams over Slovak. See *Davis, supra.* We find that no genuine issue of material fact exists regarding whether a fiduciary relationship was reposed between the parties. Appellants' first assignment of error is therefore found not well taken.

### Indemnification

Having found that Adams had no duty to notify Slovak or to acquire replacement coverage for her, Adams also could not have breached any such duties. Accordingly, the trial court correctly concluded that Adams was entitled to summary judgment on National Mutual's claim for indemnification. Appellants' third assignment of error is therefore found not well taken.

### ADAMS' CROSS–ASSIGNMENT OF ERROR

We have thoroughly reviewed Wolman's affidavit and find that it satisfies the requirements of Civ.R. 56(E). Accordingly, Adams's cross-assignment of error is found not well taken.

### CONCLUSION

On consideration whereof, the court finds substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellants are ordered to pay the court costs of this appeal.

*Judgment affirmed.*

SHERCK and GLASSER, JJ., concur.

GEORGE M. GLASSER, J., retired, of the Sixth Appellate District, sitting by assignment.