NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0468n.06

No. 23-3071

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

VESI INCORPORATED,

      Plaintiff,

      v.

VERA BRADLEY DESIGNS INC.,

      Defendant.

_____

VERA BRADLEY DESIGNS INC.,

      Counterclaim Plaintiff - Appellee,

      v.

VESI INCORPORATION; GREGORY
VISCONTI; DALE DAVIDSON,

      Counterclaim Defendants - Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Nov 09, 2023
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF OHIO

OPINION

BEFORE: GIBBONS, BUSH, and DAVIS, Circuit Judges.

BUSH, Circuit Judge. This case concerns an alleged breach of fiduciary duty based on a claimed de facto fiduciary relationship under Ohio law. The dispute also involves college swag: Vesi Incorporated and Vera Bradley Designs, Inc. worked together to produce and sell handbags and various types of apparel with university logos. About three years into their business relationship, Vesi suffered a catastrophic financial loss from a business deal gone wrong, and it had insufficient funds to meet its obligations. Vera Bradley worked with Vesi to set up a payment plan, but Vesi wanted more financial support to continue its business and avoid bankruptcy. When Vera Bradley was unwilling to provide further financial assistance, Vesi ceased its

operations. This suit then followed. We affirm the district court's grant of summary judgment to Vera Bradley.

## I.

Vera Bradley sells many items including handbags, luggage, backpacks, women's clothing, and bedding. Vesi owns multiple licensing rights to put universities' logos onto certain products. The two companies brought their respective strengths together to begin their business relationship in 2015.

In particular, Vera Bradley manufactured the goods, onto which either Vesi or a third party embroidered the universities' logos. Each company then sold the Vera Bradley merchandise with university logos on them.

Vesi and Vera Bradley did not have a written contract; they operated by verbal agreement and an agreed-to price list. Based on that list, each company paid the other a set amount when it sold a product. Vesi and Vera Bradley determined how much either company owed the other by tracking their respective sales during the month on an Excel spreadsheet.

During the entirety of their business relationship, Vesi and Vera Bradley were separate entities. They did not share profits or losses. They had separate offices and separate employees. They paid separate taxes. And they did not have an executed partnership agreement. Moreover, Vesi could not act to bind Vera Bradley or vice versa.

All seemed to go smoothly until about mid-2018. By that point, Vera Bradley was Vesi's last remaining core account, and Vesi confided in Vera Bradley that Vesi feared for its financial future. Vesi's troubles stemmed from Amazon's cancellation of a $2.8 million order it had placed with the company. That cancelled order cost Vesi $800,000 in net profit, placing it "in a very deep

hole." Visconti Dep., R. 44, PageID 423, 442. And because Vesi had already paid its factories to manufacture the product for the Amazon order but could not generate the revenue to offset those payments, Vesi lost a "vast" amount of its sales and profits in 2018. *Id.* at PageID 444–45. As a result, Vesi eventually fell behind on its payments to Vera Bradley by about $120,000.

When it learned of Vesi's predicament, Vera Bradley tried to help. It set up a payment plan and discussed possible options to assist Vesi financially. The potential lifelines included Vera Bradley acquiring Vesi or providing a loan to Vesi to see it through the rough time. As a part of these conversations, Vesi provided Vera Bradley with three years of financial data. But a review of that information led Vera Bradley's CEO, Rob Wallstrom, to doubt Vesi's viability even if Vera Bradley helped out. He also believed that if Vera Bradley did more for Vesi, that would put his company in a "precarious position." April 1, 2019 Telephone Conversation, R. 45-1, PageID 908. The bottom line, in Wallstrom's view, was that making a loan to Vesi would be a "significant risk" for Vera Bradley. *Id.* at PageID 914. So, ultimately, Vera Bradley determined that providing further assistance to Vesi beyond the payment plan was not in its best interest. Consequently, Vesi ceased operations on May 31, 2019.

## II.

Vesi brought claims against Vera Bradley for breach of fiduciary duty, unfair competition, and tortious interference with a prospective business relationship. Vera Bradley moved for summary judgment on all claims against it and on its counterclaim for money owed—specifically, for the $47,684.43 that remained on its Vesi account. In its opposition to summary judgment, Vesi withdrew its causes of action for unfair competition and tortious interference with a prospective business relationship, leaving only breach of fiduciary duty as the basis for the complaint. Vesi also changed its theory of breach from one based on an alleged partnership to a breach of an alleged

de facto fiduciary relationship. Despite Vesi's change in litigation position, the district court granted summary judgment to Vera Bradley on both Vesi's breach of fiduciary duty claim and the counterclaim for money owed.

**III.**

We review a district court's grant of summary judgment de novo. *Jackson v. City of Cleveland*, 925 F.3d 793, 806 (6th Cir. 2019). Summary judgment is appropriate when there is "no genuine dispute as to any material fact," and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]e view the factual evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in that party's favor." *Burwell v. City of Lansing*, 7 F.4th 456, 462 (6th Cir. 2021) (alteration in original) (citation omitted).

**IV.**

The only issue for this appeal is whether a fiduciary relationship existed between Vesi and Vera Bradley. We apply Ohio law, as the parties do not dispute that it governs this diversity action.

"Under Ohio law, a fiduciary relationship is one in which 'special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtues of this special trust.' " *Anchor v. O'Toole*, 94 F.3d 1014, 1023 (6th Cir. 1996) (quoting *Craggett v. Adell Ins. Agency*, 635 N.E.2d 1326, 1331 (Ohio Ct. App. 1993)). A fiduciary relationship can either arise through a formal appointment or de facto. *Craggett*, 635 N.E.2d at 1331. A de facto fiduciary relationship may develop from an informal confidential relationship where a "person comes to rely on and trust another in his important affairs." *Id.* (internal quotation marks and citations omitted). The relations supporting de facto fiduciary status do not need to be legal in nature, but can be moral, social, domestic, or personal. *Id.*

One necessary requirement, though, is that the informal confidential relationship be mutual. *Id.*; *see also Nazareth Deli LLC v. John W. Dawson Ins. Inc.*, 200 N.E.3d 652, 665 (Ohio Ct. App. 2022). The Ohio Supreme Court has explained that a fiduciary duty may arise from an informal relationship only when "*both* parties understand that a special trust or confidence has been reposed." *Umbaugh Pole Bldg. Co. v. Scott*, 390 N.E.2d 320, 323 (Ohio 1979) (emphasis added). A party's testimony "that he reposed a special trust or confidence in [another] is insufficient as a matter of law to prove the existence of a fiduciary relationship" absent evidence that the other party understood that a special trust had been reposed. *McDonnell v. Cardiothoracic & Vascular Surgical Assocs., Inc.*, No. C2-03-0079, 2004 WL 3733403, at *4 (S.D. Ohio July 30, 2004) (quoting *Schulman v. Wolske & Blue Co.*, 708 N.E.2d 753, 758 (Ohio Ct. App. 1988)), *aff'd*, 165 F. App'x 423 (6th Cir. 2006). And it remains well settled that "unilateral expectations are not sufficient" to establish a special relationship giving rise to a fiduciary duty. *Ingram v. Glavin*, 216 N.E.3d 710, 731 (Ohio Ct. App. 2023); *see also Tornado Techs., Inc. v. Quality Control Inspection, Inc.*, 977 N.E.2d 122, 126 (Ohio Ct. App. 2012); *Slovak v. Adams*, 753 N.E.2d 910, 917 (Ohio Ct. App. 2001).

In its attempt to show a de facto fiduciary relationship, Vesi first put forth evidence it claimed would demonstrate that its principals believed that Vera Bradley acted as a fiduciary towards Vesi. But none of the testimony cited by Vesi established that Vera Bradley understood that Vesi had reposed a special confidence or trust in it. *Ingram*, 216 N.E.3d at 731 (explaining that unilateral expectations are insufficient to establish a fiduciary relationship). Indeed, although Vesi's co-owner Dale Davidson testified that he believed that Vera Bradley owed a fiduciary duty to Vesi, nothing in his testimony established that Vera Bradley representatives told him that they considered the companies to have such a relationship.

Vesi attempted to overcome this deficiency by pointing out that Susan Fuller, Vera Bradley's Chief Merchandising Officer until 2017, had referred to Vesi as Vera Bradley's "partner" in various business communications. However, the fact that the word "partner" was used does not, in and of itself, establish a de facto fiduciary relationship. *Cf. Thermodyn Corp. v. 3M Co.*, 593 F. Supp. 2d 972, 982 (N.D. Ohio 2008) (explaining that under Ohio law, "[m]ere words describing the relationship, however, do not establish the existence of a partnership"). In fact, Vesi does not even attempt to argue that Vera Bradley and Vesi were legal partners, as it withdrew that argument in its opposition to Vera Bradley's summary judgment.

Fuller testified that she used the word "partner" to refer to *any* entity that Vera Bradley did business with, including manufacturers and other retailers that were legally independent from the company. So, when Fuller's communication is taken in context, it is clear that she spoke of a partnership with an informal, not a legal, meaning. And Fuller's colloquial expression is consistent with how other Vera Bradley executives characterized the company's relations with other separate entities in arms-length business transactions. Moreover, it aligned with how Vesi itself employed the term. As Vesi's co-owner Gregory Visconti acknowledged, he used the word "partner" in business communications to refer to other companies that he did not consider to be in a partnership with Vesi or to have any other heightened relationship with his company.

But Vesi insists that it has more evidence to survive summary judgment. Vesi argues that because it discussed its financial problems with Vera Bradley for nearly a year before it ceased operations, this shows that Vesi placed a special trust in Vera Bradley. In particular, Vesi asserts that it would not have disclosed three years of financial records if it did not have a special confidence and trust in Vera Bradley. But again, Vesi's argument only focuses on the relationship between the parties from its own perspective, and not from the viewpoint of Vera Bradley.

More importantly, any evidence that Vera Bradley considered various options on how to help keep Vesi—a company with which it regularly did business—financially viable is insufficient, standing alone, to establish a fiduciary relationship between the parties. Vesi owned several licenses that Vera Bradley depended on for the sale of certain products. Without those licenses, Vera Bradley would need to make the financial investment of purchasing the licenses itself, or else it no longer could sell that merchandise. Thus, Vera Bradley's interest in maintaining Vesi's viability was entirely consistent with the expected behavior of an independent, profit-focused business. Absent any evidence that Vera Bradley considered itself to be a fiduciary, its review of Vesi's financials was nothing more than the due diligence required to decide whether it was likely that Vesi would repay a loan. In short, Vera Bradley's reason to review the financials had nothing to do with any fiduciary obligation owed to Vesi and everything to do with protecting Vera Bradley's own business.

Other communications during this time further demonstrate that Vera Bradley was merely acting to advance its own financial interests. For example, Vera Bradley's CFO, John Enwright, stated in a November 2018 email to Vesi that an investment by Vera Bradley did not "make[] 100% sense on [Vera Bradley's] side right now," but that he was open to an idea that would "work[] for both parties." Email from John Enwright to Greg Visconti (Nov. 26, 2018), R. 77, PageID 3153. He also stated in a December 21, 2018 phone call that it did not "necessarily make sense for us [Vera Bradley] to give you [Vesi] a couple million dollars as of right now." Dec. 21, 2018 Telephone Conversation, R. 45-1, PageID 875. And when Vesi proposed that Vera Bradley provide it a $500,000 loan, Wallstrom and Enwright responded on February 26, 2019, that they needed to see a plan and be confident that Vesi could repay the debt. Finally, on April 1, 2019, Vera Bradley informed Vesi that it was not willing to extend a loan or acquire Vesi. Wallstrom

stated that providing a loan could be a "significant risk" for Vera Bradley because he did not think that Vesi would be financially viable even with Vera Bradley's help. April 1, 2019 Telephone Conversation, R. 45-1, PageID 906–09, 914, 917.

In the end, Vesi failed to offer proof that Vera Bradley indicated that it would prioritize Vesi's interests over its own or any other indicia that it owed a fiduciary duty to Vesi. To the contrary, Vesi's co-owners Davidson and Visconti testified that they understood that Vera Bradley was not legally obligated to acquire Vesi, assist it financially, or help to keep Vesi viable. The district court thus properly concluded that there is insufficient evidence, as a matter of law, that special circumstances existed to elevate the relationship between Vesi and Vera Bradley from that of two businesses engaged in ordinary arms-length commercial transactions to that of fiduciaries.[1]

## V.

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment to Vera Bradley.

---

[1] Finally, Vesi failed to raise any argument regarding the district court's grant of summary judgment to Vera Bradley on its counterclaim against Vesi for money owed. This court has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived." *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013). Accordingly, Vesi has forfeited any argument as to Vera Bradley's counterclaim. *See Scott v. First S. Nat'l Bank*, 936 F.3d 509, 522 (6th Cir. 2019) ("In this Circuit, an appellant forfeits an argument that he fails to raise in his opening brief.").