MCGLONE ET AL., APPELLEES, *v.* MIDWESTERN GROUP, APPELLANT.

[Cite as *McGlone v. Midwestern Group* (1991), 61 Ohio St.3d 113.]

(No. 90–837—Submitted March 5, 1991—Decided July 10, 1991.)

114

*Dennis A. Becker,* for appellees.

*Ulmer & Berne, Marvin L. Karp, Ely & True* and *Gary D. Ostendarp,* for appellant.

SWEENEY, J.  The present action involves the application of R.C. 3929.25 to the policy of insurance issued by appellant herein.  R.C. 3929.25 provides in relevant part:

"A person, company, or association insuring any building or structure against loss or damage by fire or lightning, by renewal of a policy, shall have such building or structure examined by his or its agent, and a full description thereof made, and its insurable value fixed, by said agent.  In the absence of any change increasing the risk without the consent of the insurers, and in the absence of intentional fraud on the part of the insured, *in the case of total loss the whole amount mentioned in the policy or renewal, upon which the insurer received a premium, shall be paid.*  If, however, the policy of insurance, by its express terms, permits the policyholder to recover the full cost of repair, or replacement, of the building or structure, without deduction for depreciation or obsolescence, up to the limits of the policy *in the event that the building or structure is in fact repaired or replaced,* the amount of recovery for any loss under such a policy of insurance shall be as prescribed by the policy.  * * *"  (Emphasis added.)

This court was asked to construe the predecessor to R.C. 3929.25 (R.S. 3643 later codified as G.C. 9583) in *Insurance Co. v. Leslie* (1890), 47 Ohio St. 409, 24 N.E. 1072.  It was determined at that time that the statute rested "upon considerations of public policy;  one of its purposes being to exact of insurance companies doing business in this state reasonable diligence and care to avoid improper risks and overinsurance, by requiring their agents to make personal examination of the property, and fix its insurable value, before writing the insurance.  Well-regulated companies, after such examination, would not take the risk, if not a proper one, nor write a policy for an amount greater than the actual value of the property.  The more effectually to accomplish this purpose, the statute has provided that the company shall be liable on its policy

unless a change subsequently occurs increasing the risk without its consent, or the assured has been guilty of intentional fraud, and that in case of total loss the company shall abide by the valuation it has placed upon the property." *Id.* at 416, 24 N.E. at 1074.

Thus, according to the decision in *Leslie,* where an insurance company has assigned a value to real property for the purpose of arriving at a premium amount, the company is estopped from ascribing a lesser value to the property once total destruction thereto has occurred and a claim under the policy has been submitted by the insured.

Effective July 31, 1980, R.C. 3929.25 was amended by the General Assembly to add the third sentence of the present statute. It is the contention of appellant that the 1980 amendment was designed to limit the obligation of the insurer to pay the total face value of the policy only where the insured actually replaces the property totally destroyed and the loss meets or exceeds the policy limits. However, an equally plausible explanation for the added statutory language is that it limits the liability of the insurer to the replacement cost of the structure where replacement occurs and the cost is less than the insurable value of the destroyed property as set by the policy.

Moreover, were we to adopt the interpretation of the *third* sentence of R.C. 3929.25 urged by appellant, we would render meaningless the *second* sentence thereof which plainly requires that "the whole amount mentioned in the policy or renewal, upon which the insurer received a premium, shall be paid" in the event of a total loss. We therefore conclude that, pursuant to R.C. 3929.25, where an insured party sustains a total loss to property covered under a fire insurance policy and does not replace such property, that party is entitled to payment of the full face value of the policy absent any change increasing the risk without the consent of the insurer and absent intentional fraud on the part of the insured.

Our holding in the case *sub judice* underscores the public policy foundations of R.C. 3929.25 as identified in *Leslie,* while giving full effect to the statutory language added by the General Assembly in 1980. It assures that consumers of insurance services will be made whole to the extent of their coverage either through receipt of amounts equal to the insurable value of the property for which premiums were paid or through replacement of the destroyed structure.

The alternative interpretation of R.C. 3929.25 advanced by appellant would have the anomalous effect of requiring an insured to potentially incur expenses over and above the policy limits (where such limits are exceeded by the cost of replacement) in order to realize an amount equal to the insurable value of the property set by the policy and upon which the premiums were based. This result is contrary to the plain language of the statute.

Appellant further argues that the purpose of the 1980 amendment was to prevent arson by discouraging insureds from insuring properties for an amount in excess of their replacement value. Under such circumstances, appellant maintains, an insured would be permitted to profit from an inflated value ascribed to the property by the policy. This argument is erroneous in numerous respects. As an initial matter, the second sentence of R.C. 3929.25 clearly precludes recovery of the value of the property set by the policy in the event of intentional fraud by the insured. Secondly, the argument assumes that the insurer will acquiesce in a practice which attributes to the property a value bearing no relationship to reality. Not only is the insurer under no obligation to accept an inflated value set by the insured, but, pursuant to R.C. 3929.25, the *insurer* is responsible for establishing the insurable value.

Finally, the argument of appellant assumes that, in all cases where an insured chooses not to rebuild, insurance fraud must be present. This contention lacks empirical support and contradicts the plain language of R.C. 3929.25. The statute clearly presumes that the issue of fraud is to be resolved on a case-by-case basis.

Accordingly, the judgment of the court of appeals is affirmed, and the cause is remanded to the trial court for further proceedings.

*Judgment affirmed*
*and cause remanded.*

DOUGLAS and RESNICK, JJ., concur.

H. BROWN, J., concurs in judgment.

MOYER, C.J., HOLMES and WRIGHT, JJ., dissent.

HERBERT R. BROWN, J., concurring in judgment. At the outset, I note that it is extremely difficult to read, and find the meaning from, the language used in R.C. 3929.25 and the insurance policy at issue here. Based on my examination of the statute and the insurance policy, I join the judgment of the majority.

I agree, for the most part, with the dissent's interpretation of the third sentence of R.C. 3929.25. This sentence suffers from a nearly-incomprehensible grammatical structure. However, since it is an expression of the will of the General Assembly, we are required to give it meaning wherever possible. See *Ford Motor Co. v. Ohio Bur. of Emp. Serv.* (1991), 59 Ohio St.3d 188, 190, 571 N.E.2d 727, 730, and authorities therein cited. The statute appears to allow the insurer to limit the amount of recovery to the depreciated value of the property when the insured structure is not rebuilt.

On the facts before us, I join in the majority's judgment. The applicable language of the insurance policy at issue here does not unambiguously limit the amount of recovery in the manner seemingly permitted by statute.

The majority opinion sets forth the applicable policy language in full. Since the face amount of the policy, $35,000, is less than eighty percent of the replacement cost, $46,191.34,[1] subsection (1) of paragraph 5(c) does not apply, Midwestern's argument to the contrary notwithstanding. The amount of recovery is determined by subsection (2), not subsection (1). Subsection (2) states:

"If at the time of loss the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately prior to the loss, we will pay the larger of the following amounts, but not exceeding the limit of liability under this policy applying to the building:

"(a) the actual cash value of that part of the building damaged; or;

"(b) that proportion of the cost to repair or replace, without deduction for depreciation, of that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building."

According to this provision, the insurer will pay the greater of the amounts determined by parts (a) and (b). The amount determined by part (a) is the "actual cash value." As noted in the majority opinion, this is $23,585.87. The amount under part (b) is harder to determine, but I believe it is $35,000.[2] Taking the greater of the two, as the policy directs, the insurer is thereby liable for the full face amount, $35,000.

There is, however, an additional wrinkle posed by subsection (4), which states:

"When the cost to repair or replace the damage is more than $1000 or more than 5% of the amount of insurance in this policy on the building, whichever is less, we will pay no more than the actual cash value of the damage until actual repair or replacement is completed."

This provision does not state what should happen if, as in the instant case, the insured chooses not to repair or replace the insured structure. It may

---

1. Eighty percent of $46,191.34 is $36,953.07.

2. To my understanding, the "proportion * * * which the total amount of insurance in this policy * * * bears to 80% of the replacement cost" is $35,000 (the policy limits) divided by $36,953.07 (eighty percent of the replacement cost), which is approximately 94.7 percent. 94.7 percent of $46,191.34 is $43,743.20, which exceeds the face amount of the policy. Therefore, under part (b), the insured would get the face amount of the policy, $35,000.

have been the insurer's intent to limit recovery in this situation to the actual cash value; but if that was its intent, it is not clearly stated. Given that insurance policies are to be strictly construed in favor of the insured, *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus, we should not read in the limitation if it is not present. Therefore, I conclude that subsection (4) does not, in the instant case, modify the amount due the insured under subsection (2).

Based on the language of the policy, I conclude that the McGlones were entitled to the full $35,000 face amount of the insurance policy, and join in the judgment of the majority.

WRIGHT, J., dissenting. I am satisfied that the majority has misread R.C. 3929.25 and in so doing has overlooked the legislative intent behind the 1980 amendment to that statute.

The majority reads the third sentence of R.C. 3929.25 contrary to its natural meaning. The second sentence of R.C. 3929.25 requires insurers to pay the face amount of fire insurance policies upon total destruction of the insured structure. The third sentence, beginning "If, however," provides an exception to the provisions of the second sentence through an if-then construction. Contrary to the majority's interpretation of this clause, the "if" clause contains only one condition that triggers the "then" clause (which is not introduced by "then" but rather only set off by a comma). The sole condition in the "if" clause is the existence of a particular type of insurance policy that provides for a full recovery of the face amount of the insurance policy when the insured building is actually replaced. Although not introduced by either a coordinating conjunction or appropriate punctuation, the clause that reads "in the event that the building or structure is in fact repaired or replaced" is interpreted by the majority not as a further description of the policy but as an additional condition to trigger the "then" clause. In effect, the majority has added a new condition to the third sentence that, if properly written, would look like this:

"If, however, the policy of insurance, by its express terms, permits the policyholder to recover the full cost of repair, or replacement, of the building or structure, without deduction for depreciation or obsolescence, up to the limits of the policy in the event that the building or structure is in fact repaired or replaced, *and the building or structure is in fact repaired or replaced,* the amount of recovery for any loss under such a policy of insurance shall be as prescribed by the policy."

Of course, this result is contrary to the letter and spirit of the law. In my view, the majority's interpretation of what the legislature did enact does a disservice to its plain meaning.

Nevertheless, the majority reasons that interpreting the third sentence of R.C. 3929.25 to except replacement cost policies from the second sentence emasculates the import of the second sentence. According to the majority, today's holding interprets the third sentence to give meaning to both sentences. Specifically, the majority states that "an equally plausible explanation for the added statutory language is that it limits the liability of the insurer to the replacement cost of the structure where replacement occurs and the cost is less than the insurable value of the destroyed property as set by the policy."

Although the majority's rationale is facially attractive, a review of the legislation that enacted the third sentence of R.C. 3929.25 and the circumstances precipitating the amendment reveal that the third sentence was intended as an exception to the second sentence for replacement cost policies in order to encourage replacement and not as an exception for replacement cost policies only where replacement occurs.

The insurance industry created replacement cost policies in response to the threat of arson arising from the difference between actual cash value and replacement cost. Replacement cost policies provide for coverage up to the face amount of the policy only upon replacement, limiting recovery to cash value if the structure is not replaced. The goal of these policies is to remove the incentive for arson. (An older structure purchased for $100,000 that would cost $200,000 to replace and is insured for $200,000 presents a grand incentive for arson if the full $200,000 is recoverable whether or not the structure is replaced.)

Prior to 1980, these policies were ineffective in Ohio under former R.C. 3929.25 and *Insurance Co. v. Leslie* (1890), 47 Ohio St. 409, 24 N.E. 1072 (interpreting the predecessor to R.C. 3929.25), which always required the full amount paid upon total destruction. R.C. 3929.25 and *Leslie* were intended to prevent an insurer from overinsuring a property, then limiting recovery to actual cash value.

When an insured requires insurance that will provide for replacement of a structure, such insurance will usually provide for coverage in excess of the actual cash value of the structure. The gap between actual cash value and replacement cost is an inevitable consequence of depreciation. Thus, a side effect of *Leslie* is that it encourages arson where the actual cash value of a structure is less than the amount for which the structure is insured, which is invariably the case with replacement cost insurance.

In an effort to combat arson, the General Assembly enacted Am.Sub.S.B. No. 198 in 1980. 138 Ohio Laws, Part I, 683–693. This Act, directed entirely toward attacking arson, amended R.C. 3929.25 by adding its third sentence.

The majority's reading of the third sentence offers nothing toward fighting arson, however, in spite of the legislative mandate. Unmistakably, the preamble to Am.Sub.S.B. No. 198 announces that replacement cost policies are now to be an exception to *Leslie:*

"An Act to amend section * * * 3929.25 * * * of the Revised Code * * * to condition payment of replacement value of a building under a fire insurance policy upon actual use of the proceeds for its replacement." 138 Ohio Laws, Part I, at 683.

In light of the natural meaning of the third sentence of R.C. 3929.25 and the legislative history behind its enactment, I cannot join the result reached by the majority today.

MOYER, C.J., and HOLMES, J., concur in the foregoing dissenting opinion.