OPINION *Page 2 
{¶ 1} Plaintiffs-appellants Gerald and Sharon Horak appeal from the June 23, 2006, Judgment of the Summit County Court of Common Pleas granting summary judgment to defendants-appellees Nationwide Insurance and Timothy Crawford.
 STATEMENT OF THE FACTS AND CASE {¶ 2} In approximately 1984, appellant Gerald Horak built a house in Barberton, Ohio for approximately $120,000.00. Appellant Gerald Horak later put an addition onto the back of the house that included a sunroom and a deck. Including the addition, the house had 2,240 square feet.
 {¶ 3} Bob Nettle, an agent with appellee Nationwide Insurance Company, was appellants' original insurance agent. At the time Nettle was their agent, appellants had Full Replacement Cost Coverage in their homeowner's insurance policy.
 {¶ 4} When Nettle retired, appellee Timothy Crawford became appellants' agent in approximately 1988. Appellants were unaware how the amount of insurance coverage on their house was originally determined, but noticed that, over the years, the amount of coverage appeared to be"going up exponentially." Deposition of Gerald Horak at 53. During his deposition, appellant Gerald Horak testified that the Nationwide insurance polices with the declarations page would be sent to appellants' house and that he would put them in a file once he received them. Deposition of Gerald Horak at 57. When asked during his deposition if he ever read through the policies and declaration pages, appellant Gerald Horak testified that he read through them"sometimes," but"didn't look at them in detail." Appellant Sharon Horak also testified *Page 3 
that she only glanced at the declarations pages as they came in. The following is an excerpt from the deposition testimony:
 {¶ 5} "MR. COMSTOCK: And in the years preceding 2000, you were not aware that the insurance coverage was actually less that 132 — ?
 {¶ 6} "MRS. HORAK: No. I just — I would look at the policy, and it did say that was had full replacement, and I never —
 {¶ 7} "MR. COMSTOCK: You never looked at an amount?
 {¶ 8} "MRS. HORAK: No. I just assumed that it would cover the full.
 {¶ 9} "THE WITNESS: [Appellant Gerald Horak] We never thought about it.
 {¶ 10} "MR. COMSTOCK: Your testimony is that you looked at the insurance policy, saw that it provided full replacement coverage and really didn't pay attention to the numbers?
 {¶ 11} "MRS. HORAK: Yes.
 {¶ 12} "BY MR. COMSTOCK:
 {¶ 13} "Q. And the same with you? [Appellant Gerald Horak]
 {¶ 14} "A. I would concur with that." Transcript of Gerald Horak at 58-59.[1]
 {¶ 15} Appellants' house was substantially damaged by a fire caused by lightening in May of 2000, and was declared a loss. At the time of the fire, appellants' Elite II Homeowners' Policy with appellee Nationwide Insurance provided dwelling coverage [Coverage A] in the amount of $132,000.00 and personal property coverage in the amount of $72,710.00. The policy, which was issued on September 9, 1999, and had a policy period from October 11, 1999 to October 11, 2000, stated in an amendment, in relevant part, as follows: *Page 4 
 {¶ 16} "In the . . . Elite II policies, under Section I-Options, Option J-Replacement Cost Guarantee (Dwelling) is deleted and replaced by the following:
 {¶ 17} "Option J. Replacement Cost Plus (Dwelling) (Increased Coverage A Limit)
 {¶ 18} "When a loss covered by this policy occurs the dwelling in which you live, located at the residence premises, we will settle losses, subject to applicable deductibles, according to the policy provisions.
 {¶ 19} "If the amount actually and necessarily spent to repair or replace the dwelling is more than the Coverage A-Dwelling Limit of Liability, we will pay up to a maximum of an additional 20% of the Coverage A limit for the additional costs . . ." As is stated above, the limit of liability for Coverage A was $132,000.00.
 {¶ 20} Appellee Nationwide paid appellants $160,622.40 for the dwelling, $74,818.87 for the contents, $56,177.50 for additional living expenses and $11,542.60 for demolition and landscaping. Appellants rebuilt their former home at a cost of approximately $260,000.00
 {¶ 21} Subsequently, on February 26, 2003, appellant filed a complaint against appellees in the Summit County Court of Common Pleas.[2]
Appellants, in their complaint, alleged that appellee Nationwide Insurance Company had breached its contract with them by failing to completely pay appellants' claims and breached its duty to act in good faith and fair dealing in the handling and payment of their claims. Appellants also alleged that appellee Nationwide Insurance Company breached its fiduciary obligation to them, when appellee Timothy Crawford was negligent in advising and counseling them as to their insurance coverage needs and in determining *Page 5 
coverage, and that appellee Nationwide Insurance Company was liable for his negligent acts and/or omissions.
 {¶ 22} On August 17, 2004, appellees filed a Motion for Summary Judgment. Pursuant to a Judgment filed on June 23, 2006, the trial court granted appellees' motion and dismissed appellants' complaint with prejudice.
 {¶ 23} Appellants now raise the following assignments of error on appeal:
 {¶ 24} "I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEES, TIMOTHY CRAWFORD AND NATIONWIDE INSURANCE COMPANY, REGARDING AN INSURANCE AGENT'S LIABILITY FOR HIS NEGLIGENT ACTS.
 {¶ 25} "II. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEE, NATIONWIDE INSURANCE COMPANY, REGARDING THE BREACH OF CONTRACT CLAIM.
 {¶ 26} "III. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEE, NATIONWIDE INSURANCE COMPANY, REGARDING THE BAD FAITH CLAIM."
 {¶ 27} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36, 506 N.E.2d 212. As such, we must refer to Civ.R. 56 which provides, in pertinent part:" * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is *Page 6 
no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefore, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor.* * *"
 {¶ 28} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421, 429, 1997-Ohio-259,674 N.E.2d 1164, citing Dresher v. Burt, (1996), 75 Ohio St.3d 280,662 N.E.2d 264.
 {¶ 29} It is based upon this standard that we review appellants' assignments of error.
 I {¶ 30} Appellants, in their first assignment of error, argue that the trial court erred in granting summary judgment in favor of appellees Timothy Crawford and Nationwide *Page 7 
Insurance Company regarding appellee Crawford's liability for his negligent acts. We disagree.
 {¶ 31} As an initial matter, we note that appellants, in the case sub judice, allege that they had a fiduciary relationship with appellee Timothy Crawford, their insurance agent, and that he breached the same.[3] "A claim of breach of a fiduciary duty is basically a claim of negligence, albeit involving a higher standard of care." Strock v.Presnell (1988), 38 Ohio St.3d 207, 216, 527 N.E.2d 1235. Whether or not a fiduciary relationship exists depends on the facts and circumstances of each case. Depaugh v. Ohio Dept. of Commerce, Div. of RealEstate (1998), 128 Ohio App.3d 528, 533, 715 N.E.2d 622. A fiduciary relationship exists when a"special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust."In re Termination of Employment (1974), 40 Ohio St.2d 107, 115,321 N.E.2d 603.
 {¶ 32} As noted by the court in Advent v. Allstate, Franklin App. No. 05AP-1092, 2006-Ohio-2743:"Generally, the relationship between an insurance agent and his client is not a fiduciary relationship, but rather, an ordinary business relationship. Slovak v. Adams (2001),141 Ohio App.3d 838, 846, 753 N.E.2d 910; Gillin v. Indiana Ins. Co. (Oct. 30, 1998), Montgomery App. No. CA17108. See, also, Nielsen Enterprises,Inc. v. Ins. Unlimited Agency, Inc. (May 8, 1986), Franklin App. No. 85AP-781 ("While the law has recognized a public interest in fostering certain professional relationships, such as the doctor-patient and attorney-client relationships, it has not recognized the insurance *Page 8 
agent-client relationship to be of similar importance."). However, a fiduciary relationship can arise from such an informal relationship when both parties understand that a special trust or confidence has been reposed. Ed Schory Sons, Inc. v. Society Natl. Bank,75 Ohio St.3d 433, 442, 662 N.E.2d 1074, 1996-Ohio-194; Hoyt v. Nationwide Mut. Ins.Co., Franklin App. No. 04AP-941, 2005-Ohio-6367, ¶ 30-31." Id at paragraph 14. Thus, a fiduciary relationship cannot be unilateral, but must be mutual.
 {¶ 33} Upon our review of the record, we concur with the trial court that there is no evidence that a fiduciary relationship exited between appellants and appellee Crawford. There is no evidence that the relationship between them was anything other than an ordinary insurance agent-client relationship. Appellee Crawford, during his deposition, testified that he reviewed the limits of the policy with appellants on a regular basis and that he usually did so via a telephone call with appellant Gerald Horak. According to appellee Crawford, appellant Gerald Horak would call him. The following is an excerpt from appellee Crawford's deposition testimony:
 {¶ 34} "Q. And how often does a homeowner's policy under Nationwide, how often does it renew?
 {¶ 35} "A. Annually.
 {¶ 36} "Q. And so if I understood you correctly, you did not contact the Horaks on an annual basis to talk to them about the renewal and any changes?
 {¶ 37} "A. Same as their auto, no.
 {¶ 38} "Q. Why not?
 {¶ 39} "A. Well, there is usually correspondence with Mr. Horak at least twice a month. I would see him socially. *Page 9 
 {¶ 40} "Q. And what occasion was that?
 {¶ 41} "A. Either at the Salvation Army board meeting, or he was also a business manager and assistant superintendent for the school system.
 {¶ 42} "Q. And is it your testimony that you relied upon social gatherings to obtain —
 {¶ 43} "A. Usually, if somebody had some question they might mention it, certainly.
 {¶ 44} "Q. Do you remember ever discussing his homeowner's coverage at the Salvation Army board or involving the school system activities?
 {¶ 45} "A. Well, if he had a question, certainly he'd bring it up.
 {¶ 46} "Q. What about you? Would you inquire about any changes or corrections to their coverage?
 {¶ 47} "A. No. I can't say that I have done that with anyone.
 {¶ 48} "Q. When Mr. Horak would discuss his homeowner's coverage at these gatherings, did you ever take any notes?
 {¶ 49} "A. No. Usually, he would say that he wanted to talk to me, so I would call him at work." Deposition of Timothy Crawford at 67-68. Thus, appellee Crawford would speak with appellants about insurance coverage on a regular basis as would any other insurance agent.
 {¶ 50} Appellants, in their brief, contend that they testified about their reliance upon appellee Crawford's expertise to ensure that their property was adequately insured. Appellants specifically cite to the following deposition testimony: *Page 10 
 {¶ 51} "MR. COMSTOCK: Did you ever ask Crawford to increase your insurance coverage at any time before the loss?
 {¶ 52} "MRS. HORAK: We asked him if we were adequately insured, and he said yes.
 {¶ 53} "MR. COMSTOCK: And I know you have testified. But did you ever tell him, `We want to increase it to X dollars?'
 {¶ 54} "MRS. HORAK: No. We left that up to him.
 {¶ 55} "THE WITNESS: No, no.
 {¶ 56} "MR. COMSTOCK: Okay. You relied on — he never told — there was never a discussion where you said, `We want to increase our insurance coverage to $200,000,' it's your testimony instead, you just relied upon him to suggest if it was not high enough?
 {¶ 57} "MRS. HORAK: Yes.
 {¶ 58} "THE WITNESS: We relied on his expertise. I am not an insuranceagent, nor am I a real estate appraiser, and I just — I relied on him toprovide that service." Deposition of Gerald Horak at 231-232. [Emphasis added].
 {¶ 59} However, there is no evidence that appellants, both of whom are educated people[4], placed any more reliance on appellee Crawford than is usually placed on an insurance agent by a client. While appellee Crawford and appellant Gerald Horak served on some non-profit boards together and were both involved in school system activities, there is no evidence in the record that the two had any type of close relationship. As noted by the trial court, the communications between appellants and *Page 11 
appellee Crawford were very limited. We concur with appellees that there is a lack of evidence that appellants"placed extraordinary reliance on Mr. Crawford, or that they communicated to Mr. Crawford that they were doing so." Nor is there evidence that appellee Crawford understood that appellants were placing any special trust or confidence in him or that he had any position of superiority or influence with respect to appellants. In short, we find that appellants' reliance on appellee Crawford was no different than the reliance any client would place on an insurance agent. There is a dearth of evidence of any heightened relationship between appellants and appellee Crawford.
 {¶ 60} Based on the foregoing, we find that appellants failed to set forth any facts so creating a genuine issue of material fact with respect to whether appellee Crawford owed a fiduciary duty to them. The issue thus becomes whether appellee Crawford was negligent.
 {¶ 61} Appellants contend that appellee Crawford was negligent in failing to procure adequate insurance for them. An action for negligence may be based upon an insurance agent's failure to procure insurance.Minor v. Allstate Ins. Co. (1996), 111 Ohio App.3d 16, 21,675 N.E.2d 550. An agent will be held liable if,"as a result of his or her negligent failure to [procure insurance], the other party to the [insurance] contract suffers a loss because of a want of insurance coverage contemplated by the agent's undertaking." Id.
 {¶ 62} An insurance agency has a duty to exercise good faith and reasonable diligence in obtaining insurance which its customer requests.First Catholic Slovak Union of U.S. and Canada v. Buckeye Union Ins.Co. (1986), 27 Ohio App.3d 169, 170, *Page 12 499 N.E.2d 1303, citing Stuart v. Natl. Indemn. Co. [1982],7 Ohio App.3d 63, 66, 454 N.E.2d 158. The insured has the corresponding duty to examine the policy, know the extent of its coverage, and notify the agent if said coverage is inadequate. The Island House Inn, Inc. v.State Auto Ins. Cos., 150 Ohio App.3d 522, 782 N.E.2d 156,2002-Ohio-7107. See also Rose v. Landen, Warren App. No. CA2004-06-066, 2005-Ohio-1623."An agent or broker is not liable when a customer's loss is due to the customer's own act or omission." Craggett v. Adell Ins.Agency (1993), 92 Ohio App.3d 443, 453, 635 N.E.2d 1326.
 {¶ 63} As is stated above, testimony was adduced during the deposition of appellant Gerald Horak that neither he nor his wife read the policies or declaration pages as they were received from appellee Nationwide. Appellant Sharon Horak testified that she never looked at the amount of coverage listed on the declaration page, but"I just assumed that it would cover the full." Deposition of Gerald Horak at 58. When asked whether it was their testimony that"you looked at the insurance policy, saw that it provided full replacement coverage and really didn't' pay attention to the numbers?" both appellants responded in the affirmative. There is no evidence that either of them advised appellee Crawford that the amount of insurance on the house was inadequate and requested that he procure additional insurance for them. Any loss that appellants suffered was due to their own omission in failing to examine their own coverage and, therefore neither appellee Crawford nor appellee Nationwide Insurance is liable. Appellants had a duty to examine their Nationwide Insurance policy, to know the extent of its coverage, and to notify appellee Crawford if they thought the amount of coverage was inadequate. They, however, failed to do so. *Page 13 
 {¶ 64} Appellants further argue that appellee Crawford was negligent in carrying out his duties under R.C. 3929.25.
 {¶ 65} R.C. 3929.25 states, as follows:"A person, company, or association insuring any building or structure against loss or damage by fire or lightning shall have such building or structure examined by his or its agent, and a full description thereof made, and its insurable value fixed, by such agent. In the absence of any change increasing the risk without the consent of the insurers, and in the absence of intentional fraud on the part of the insured, in the case of total loss the whole amount mentioned in the policy or renewal, upon which the insurer received a premium, shall be paid. However, if the policy of insurance requires actual repair or replacement of the building or structure to be completed in order for the policyholder to be paid the cost of such repair or replacement, without deduction for depreciation or obsolescence, up the limits of the policy, then the amount to be paid shall be as prescribed by the policy . . . `
 {¶ 66} R.C. 3929.25, which is commonly referred to as the"valued policy statute," prevents insurers from over-insuring property, in an attempt to collect increased premiums, and then paying less than the policy limit if a building burns down and results in a total loss. SeeMcGlone v. Midwestern Group (1991), 61 Ohio St.3d 113, 115,573 N.E.2d 92.
 {¶ 67} Appellants specifically contend that appellee Crawford was negligent under the above statute because he did not go to appellants' home and perform an examination of their property in 1988 when he became their insurance agent. Appellants note that appellee Crawford"performed somewhat a minimal inspection in [the] Summer of 1993" when he went to their house and reviewed the square footage without ever *Page 14 
entering their house. Appellants further note that appellee Crawford, during his deposition, testified that, in approximately the Summer of 1993, he secured county tax auditor records and went out and systematically remeasured all the properties that he was the insurance agent for to ensure that"their replacement cost was in proper with their construction." Deposition of appellee Crawford at 62. Appellants also emphasize that appellee Crawford testified that it was not his custom to go inside a house when doing the remeasuring and that he only checked square footage and for additions and that he testified that he performed another"sweep of reviews of replacement cost" in 2000 when he checked for additions and additional hazards. Id at 65.
 {¶ 68} In short, based on the above, appellants maintain that appellee Crawford was negligent in failing to completely examine appellants' property and to address the increase in actual and replacement costs values as required by R.C. 3929.25.
 {¶ 69} However, as noted by the court in Jones v. Auto-Owners MutualIns. Co. (June 30, 1999), Lucas App. No. L-98-1297, 1999 WL 435103, R.C.3929.25 does"create a duty on the part of an insurance agent to inspect the property and to assign an insurable value at the time insurance coverage is initially sold to a property owner. However, nothing in the provisions creates an ongoing duty for the agent to make yearly inspections of the property to ensure the value of the property has not been changed." Id at 8.
 {¶ 70} As is stated above, Bob Nettle was the agent who initially sold insurance coverage to appellants. There is no evidence that he failed to inspect appellants' property before fixing the insurable value. Pursuant to Jones, supra, there was no *Page 15 
ongoing duty for appellee Crawford to do so.[5] Furthermore, in the case sub judice, appellants were paid the full amount of their coverage. Thus, the purpose of R.C. 3929.25 was satisfied.
 {¶ 71} Based on the foregoing, we find that the trial court did not err in granting summary judgment in favor of appellees Timothy Crawford and Nationwide Insurance Company regarding appellee Crawford's alleged liability for his negligent acts.
 {¶ 72} Appellant's first assignment of error is, therefore, overruled.
 II {¶ 73} Appellants, in their second assignment of error, argue that the trial court erred in granting summary judgment to appellee Nationwide Insurance Company regarding the breach of contract claim. We disagree.
 {¶ 74} As is stated above, appellants, in their complaint, alleged that appellee Nationwide Insurance Company breached the terms of their homeowners' policy by failing to pay for all damages incurred by them. The elements of a breach of contract claim are summarized as follows:"A breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the nonbreaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the nonbreaching party suffered damages as a result of the breach." Lawrence v. Lorain Cty.Community College (1998), 127 Ohio App.3d 546, 548-49, 713 N.E.2d 478. *Page 16 
 {¶ 75} In the case sub judice, there is no evidence that appellee Nationwide Insurance failed to fulfill its contractual obligations to appellants. As is stated above, the policy in effect at the time of the fire provided $132,000.00 in dwelling coverage and $72,710.00 in personal property coverage. The policy further stated, in relevant part, as follows:
 {¶ 76} "In the . . . Elite II policies, under Section I-Options, Option J-Replacement Cost Guarantee (Dwelling) is deleted and replaced by the following:
 {¶ 77} "Option J. Replacement Cost Plus (Dwelling) (Increased Coverage A Limit)
 {¶ 78} "When a loss covered by this policy occurs the dwelling in which you live, located at the residence premises, we will settle losses, subject to applicable deductibles, according to the policy provisions.
 {¶ 79} "If the amount actually and necessarily spent to repair or replace the dwelling is more than the Coverage A-Dwelling Limit of Liability, we will pay up to a maximum of an additional 20% of theCoverage A limit for the additional costs . . ." [Emphasis Added]. The limit of liability for Coverage A is $132,000.00.
 {¶ 80} As is stated above, appellee Nationwide Insurance Company paid appellants $160,622.40 for the dwelling, $74, 818.87 for the contents, $56,177.50 for additional living expenses and $11,542.60 for demolition and landscaping. Appellants received everything that they were entitled to under the insurance policy and suffered no damages. While appellants contend that appellee Nationwide Insurance did not pay for all the damages because it paid for damages under Option J Replacement Cost Plus Coverage rather than the Replacement Cost Guarantee Coverage, the fact remains that *Page 17 
the policy in effect at the time of the fire only provided for dwelling coverage in the amount of $132,000.00 plus an additional 20% above such amount, for a total of $158,400.00. Appellants received above such amount from appellee Nationwide Insurance.
 {¶ 81} Based on the foregoing, appellants' second assignment of error is overruled.
 III {¶ 82} Appellants, in their third assignment of error, contend that the trial court erred in granting summary judgment to appellee Nationwide Insurance Company on their bad faith claim. We disagree.
 {¶ 83} In Ohio, an insurer has a duty to act in good faith in handling the claims of its insured. Hoskins v. Aetna Life Ins. Co. (1983),6 Ohio St.3d 272, 452 N.E.2d 1315, paragraph one of the syllabus. In Zoppo v.Homestead Ins. Co., 71 Ohio St.3d 552, 644 N.E.2d 397, 1994-Ohio-461 the Ohio Supreme Court determined that an insurer"fails to exercise good faith in processing a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefore." Id at paragraph one of the syllabus. A lack of reasonable justification exists where an insurer refuses to pay a claim in an arbitrary or capricious manner. Hart v. Republic Mut. Ins.Co. (1949), 152 Ohio St. 185, 188, 87 N.E.2d 347. We note that even if a claim is ultimately paid,"the insurer's foot-dragging in the claims-handling and evaluation process could support a bad-faith cause of action." Unklesbay v. Fenwick, 167 Ohio App.3d 408, 2006-Ohio-2630,855 N.E.2d 516 at paragraph 15, citing Mundy v. Roy, Clark App. No. 2005-CA-28, 2006-Ohio-1993. *Page 18 
 {¶ 84} Upon our review of the record, we find no evidence that appellee Nationwide Insurance Company acted in bad faith in handling appellants' claim. The fire in the case sub judice occurred on May 17, 2000. During his deposition, appellant Gerald Horak testified that appellee Timothy Crawford showed up the next day to take photographs and that, before he arrived, Lena Earles and Bob Livingston, who are both Nationwide Insurance employees, were on the scene. Appellant Gerald Horak further testified that he received a check at such time from Lena Earles, who handles adjustment of contents, in the amount of $10,000.00 as an"advance on contents." Deposition of Gerald Horak at 87.
 {¶ 85} Appellants, in their answers to appellees' First Request for Admissions, a copy of which was attached to appellees' Motion for Summary Judgment, admitted that employees of appellee Nationwide Insurance Company conducted an investigation into the cause of the May 17, 2000, fire and determined, by May 19, 2000, that it was accidental.
 {¶ 86} Rick Cooperider, a large loss adjuster for appellee Nationwide Insurance Company, testified during his deposition that a check in the amount of $142,582.00 was issued for the dwelling on June 2, 2000. Lena Earles, during her deposition, testified that, after completing her analysis of the contents of the dwelling, she sent appellants a check in the amount of $62,482.87 in mid-August of 2000. Earles testified that this"was the balance owed on contents, the balance of the limits." Deposition of Lena Earles at 59. Thus, as noted by the trial court, by mid-August, appellants had already received more than $200,000.00. Based on the limits in the insurance policy which was in place at the time of the fire, appellee Nationwide paid a total of over $300,000.00 to appellants *Page 19 
for the dwelling, contents, additional living expenses, demolition, debris removal and landscaping.
 {¶ 87} When asked during his deposition whether he had any facts in his possession that would indicate that Lena Earles, Rick Cooperider or anyone else from Nationwide Insurance Company acted arbitrarily or capriciously or acted willfully or wantonly or with malicious purpose, appellant Gerald Horak responded in the negative.
 {¶ 88} In short, upon our review of the record, we find that there is no evidence that appellee Nationwide Insurance Company acted in bad faith in handling appellants' claim. Contrary to the allegations contained in the affidavit of Donald Dinsmore, appellants' expert, reasonable minds could only conclude appellee Nationwide Insurance did investigate and pay appellants' claim under reasonable circumstances. As is stated above, the fact that appellants were mistaken as to the amount of coverage available under their policy does not entitle them to additional coverage nor does it indicate that appellee Nationwide Insurance acted in bad faith in refusing to pay the same. As noted by the trial court, "Nationwide complied with the terms and conditions of the policy Nationwide acted expeditiously in the settlement of the claims, and it did not breach any terms of the policy." *Page 20 
 {¶ 89} Appellants' third assignment of error is, therefore, overruled.
 {¶ 90} Accordingly, the judgment of Summit County Court of Common Pleas is affirmed.
By: Edwards, J. Hoffman, P.J. and Farmer, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Summit County Court of Common Pleas is affirmed. Costs assessed to appellants.
[1] During the deposition of appellant Gerald Horak, appellant Sharon Horak also was questioned.
[2] The case was a refiled case.
[3] Appellants, in their brief, argue that whether or not a fiduciary relationship exists is a question of fact, not law, and that, therefore, summary judgment was improper. However, see Jones ex rel. Estate ofJones v. Huntington Nat. Bank, Ashland App. No. 01-COA-01432, 2002-Ohio-763 in which this Court held that"[w]e determine that the material properly considered by the trial court under Civ.R. 56 does not support the contention that a fiduciary relationship existed, . . ." Id. at 2.
[4] While appellant Gerald Horak has a doctorate in educational administration, appellant Sharon Horak is a teacher.
[5] We note that at least one case has held that R.C. 3929.25 is not applicable to a negligence action against an insurance agent by his or her client. See Munn v. Rudy Stapleton Son, Fulton App. No. F-02-030, 2003-Ohio-5606 at paragraph 25. We find to the contrary and have applied R.C. 3929.25 to our analysis of the case sub judice. *Page 1