[Cite as *Infocision Mgt. Corp. v. Michael D. Sammy Ins. Agency, Inc.*, 2014-Ohio-4653.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

INFOCISION MANAGEMENT
CORPORATION

      Appellant

      v.

MICHAEL D. SAMMY INSURANCE
AGENCY, INC., et al.

      Appellees

C.A. No.     26939

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2009-06-4531

DECISION AND JOURNAL ENTRY

Dated: October 22, 2014

---

OSOWIK, Judge.

**{¶1}** This is an appeal from an April 23, 2013 summary judgment ruling of the Summit County Court of Common Pleas, which granted summary judgment to appellees, Michael D. Sammy ("Sammy"), Michael D. Sammy Insurance Agency ("Agency"), and Farmers Insurance Exchange ("Farmers"), on the negligence claims of appellant, Infocision Management Corporation ("Infocision") made against appellees in connection to Infocision's failure to maintain vehicle liability insurance coverage for its employees traveling on company business in either leased vehicles or personal vehicles. For the reasons set forth below, this court affirms the judgment of the trial court.

**{¶2}** Appellant, Infocision, sets forth the following three assignments of error:

    I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN HOLDING INFOCISION'S NEGLIGENCE CLAIMS BARRED AS A MATTER OF LAW UNDER THE PRIMARY ASSUMPTION OF RISK DOCTRINE.

II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN GRANTING SUMMARY JUDGMENT DISMISSING INFOCISION'S BREACH OF FIDUCIARY DUTY CLAIM AS A MATTER OF LAW BASED UPON THE COURT'S FACTUAL FINDING THAT THERE WAS NO EVIDENCE OF INFOCISION'S REPOSING A SPECIAL TRUST OR CONFIDENCE IN SAMMY.

III. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN HOLDING ALL OF INFOCISION'S CLAIMS WERE TIME-BARRED AS A MATTER OF LAW BECAUSE INFOCISION DID NOT FILE THIS ACTION WITHIN FOUR YEARS AFTER SAMMY FIRST NEGLIGENTLY FAILED TO SECURE THE REQUESTED COVERAGE AND MISREPRESENTED IT WAS UNAVAILABLE.

{¶3} The following undisputed facts are relevant to this appeal. Infocision is a sizeable telemarketing corporation headquartered in Akron, Ohio. Infocision employs in excess of 4,000 people at multiple call centers located in Ohio, Pennsylvania, and West Virginia. Given the magnitude and geographical breadth of the company, a substantial amount of regional corporate travel via motor vehicle by numerous Infocision employees occurs in the course of running the business.

{¶4} Notably, despite vast amounts of motor vehicle corporate travel arising in its operations, Infocision owned just three vehicles in its corporate fleet. Thus, virtually all Infocision corporate travel was performed in either a rental vehicle or in the traveling employee's personal vehicle.

{¶5} In conjunction with the above scenario, Infocision employed a full-time travel coordinator who would arrange rental cars from a number of different rental car agencies for employees to utilize in their business travel. Although Infocision employees could utilize one of four possible car rental agencies to secure a rental vehicle for business travel, Infocision only secured liability coverage through one of the four car rental companies, Enterprise. Also, a significant percentage of motor vehicle business travel was occurring in the personal vehicles of

Infocision employees. For example, in 2003, Infocision employees were reimbursed business travel mileage in an aggregate amount of $201,212.88, reflecting 574,894 corporate travel miles taking place in employee personal vehicles.

{¶6} In 2004, despite a sizable proportion of business travel occurring in vehicles not owned by it, Infocision allowed its corporate liability coverage for non-owned motor vehicles to lapse. Progressive Insurance ("Progressive") had served as the insurance carrier for Infocision for both owned and non-owned motor vehicles. In April 2004, Progressive notified Infocision that given the extent of business travel occurring in non-owned vehicles, corporate liability coverage for non-owned vehicles could be renewed if Infocision agreed to a premium increase of approximately $30,000 per year. Rather than continue the existing corporate liability coverage, Infocision contacted insurance agent Sammy, an agent for Farmers, to explore potential alternative insurance coverage.

{¶7} On April 21, 2004, Sammy submitted an application for the desired coverage to Farmers. The Farmers' underwriter determined that it would only provide motor vehicle liability coverage to Infocision on the three vehicles owned by the company. In May 2004, Infocision was advised that Farmers would not provide liability coverage for non-owned vehicles. Accordingly, both Sammy and Forrest Thompson, the Infocision vice-president of finance and a former licensed insurance agent, explored other potential insurance carriers to provide liability coverage for non-owned vehicles. Sammy subsequently located one insurance broker potentially willing to provide the coverage. When Sammy informed Infocision of the proposed premium, it was deemed unacceptable.

{¶8} Ultimately, Infocision secured alternative liability coverage solely for the three owned vehicles, but not for the bulk of business travel occurring in non-owned vehicles.

Although Infocision employees no longer possessed company liability coverage when traveling in non-owned vehicles for business purposes unless they obtained a rental vehicle provided by Enterprise, they were still permitted to either rent vehicles from multiple companies other than Enterprise or utilize their personal vehicles.

{¶9} This insurance scenario exposed Infocision to the risk of self-insuring its potential liability in non-covered accidents. When Thompson was asked at deposition why employees were not mandated to rent vehicles and utilize only Enterprise for business travel to negate the risk of business travel in a vehicle lacking a corporate liability coverage he stated, "I guess at that period of time that -- that approach may have been overlooked."

{¶10} Tragically, in November 2007, three years after the above-described gap in company liability vehicle insurance coverage occurred and Infocision was aware of same, a West Virginia Infocision employee driving home from a company function in Akron struck and killed two pedestrians walking aside a roadway in West Virginia. Infocision elected to voluntarily settle the resultant West Virginia litigation arising from the dual fatality for $1,675,000.

{¶11} In June 2009, approximately two years after the fatal accident and more than five years after the company liability vehicle insurance coverage gap occurred, Infocision filed suit against appellees alleging negligence, breach of fiduciary duty, and vicarious liability against appellees in connection to Infocision's non-owned vehicle insurance lapse. Appellees subsequently filed for summary judgment on the grounds of primary assumption of the risk, statute of limitations, and the lack of a fiduciary relationship.

{¶12} On April 23, 2013, the trial court granted summary judgment to appellees. The trial court determined that appellant was barred from recovery in negligence against appellees based upon primary assumption of the risk, the applicable R.C. 2305.09 statute of limitations,

and that no fiduciary relationship existed. In conjunction with this, the trial court further determined that because neither Sammy, individually, or the Sammy agency was liable, vicarious liability wholly contingent upon a finding of liability against them could not be established as a matter of law. As such, summary judgment was likewise granted to Farmers on the alleged vicarious liability claim. This appeal ensued.

{¶13} On appeal, appellant maintains that the trial court erred in its summary judgment determinations on the primary assumption of the risk doctrine, breach of fiduciary duty, and on the statute of limitations.

{¶14} We note at the outset that appellate review of a trial court's summary judgment determination is conducted pursuant to a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).

{¶15} In the first assignment of error, appellant maintains that the trial court erred in determining that appellant's negligence claims are precluded pursuant to the primary assumption of the risk doctrine.

{¶16} Significantly, although appellant unilaterally concludes that the trial court made a factual finding that appellant rejected vehicle liability coverage on non-owned vehicles due to financial considerations, the record unambiguously reflects that this was not based upon a factual finding of the trial court, but rather based upon admission by appellant. The record is replete with testimony that appellant was made aware in early 2004 that its present insurer would need to increase the premium in order to continue liability coverage of non-owned vehicles, that the

premium increase was not accepted by appellant so as to cause that coverage to lapse, and that costlier alternative sources of liability coverage of non-owned vehicles were not accepted by appellant. The record is devoid of any contrary evidence on this point.

{¶17} In order to prevail upon a negligence claim, one must establish by a preponderance of the evidence that the defendant owed a duty, that actions or omissions by the defendant constituted a breach of that duty, and that the breach proximately caused the claimed damages. *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 81, 2003-Ohio-2573, 788 N.E.2d 1088.

{¶18} In conjunction with this, the Supreme Court of Ohio has consistently affirmed that demonstrating the primary assumption of the risk is applicable to a matter prevents one from recovering in negligence as a matter of law as it precludes a plaintiff from establishing the essential element of duty in negligence cases. *Anderson v. Ceccardi*, 6 Ohio St.3d 110, 112, 451 N.E.2d 780 (1983). Primary assumption of the risk is demonstrated when one shows, "(1) consent or acquiescence in (2) an appreciated or known (3) risk." *Benjamin v. Deffet Rentals*, 66 Ohio St.2d 86, 89, 419 N.E. 2d 883 (1981). Significantly, primary assumption of the risk operates as a complete bar to recovery. *Anderson* at 114.

{¶19} In applying these controlling principles to the instant case, we find that the record of evidence encompasses ample evidence that appellant knew in early 2004 that multiple employees were driving non-owned vehicles on company business with great frequency. Consistently, the record reflects that in 2003 appellant reimbursed employees for driving 574,894 miles in their personal vehicles for company purposes. In conjunction with this, the record reflects that appellant knew in early 2004 that it would not be renewing its corporate liability coverage for non-owned vehicles following notification of a $30,000 premium increase. The record reflects that as a result of declining to agree to the proposed premium increase by

Progressive, appellant contacted appellees for purposes of exploring alternative potential insurance coverage. The record reflects that Farmers was willing to provide liability insurance coverage for the three vehicles owned by appellant, but declined to do so for the numerous non-owned vehicles being used by employees for business travel. The record shows that subsequent to being advised that Farmers would not provide liability insurance coverage for non-owned vehicles, appellant was advised of an alternative insurance broker interested in furnishing that coverage. The record reflects that appellant failed to secure that coverage or any other liability insurance coverage for non-owned vehicles while simultaneously continuing the practice of employees utilizing non-owned vehicles for the bulk of company travel.

{¶20} Thompson, appellant's vice-president of finance and a former licensed insurance agent, was unambiguously asked whether he was aware that beginning in early 2004 that there was no company liability insurance coverage in place for employees utilizing personal cars or rental cars from agencies other than Enterprise when employees were traveling for company business. Thompson unequivocally answered affirmatively. Upon further inquiry, Thompson was asked why the company did not simply require employees to only travel for business with an Enterprise rental since Enterprise furnished liability coverage to Infocision's employees. Thompson responded, "That's a good question. I guess at that period of time that -- that approach may have been overlooked."

{¶21} The record shows that the amount of uncovered travel was extensive, requiring appellant to reimburse employees in excess of $200,000 annually in mileage for such travel. The record reflects that appellant failed to obtain liability insurance coverage for non-owned vehicles utilized by employees engaged in company travel for the nearly four-year period of time that transpired between appellant being aware of the liability insurance coverage gap and the accident

that occurred underlying this case. The record reflects that over five years transpired between appellant being aware of the insurance coverage gap and this case being filed.

**{¶22}** Based upon the foregoing, we find that the record of evidence in this matter clearly establishes appellant's appreciation of and acquiescence to the known risk of employees driving hundreds of thousands of miles in motor vehicles not owned by the company and lacking any liability insurance coverage on behalf of the company while engaged in the course of company business. Given that the record establishes appellant's primary assumption of the risk that underlies this matter, no duty was owed and appellant is barred from recovery as a matter of law. Although this primary assumption of the risk determination inevitably encompasses the remaining assignments of error, we will nevertheless address them on their merits, in addition to their failure based upon the primary assumption of the risk determination. We find appellant's first assignment of error not well-taken.

**{¶23}** In the second assignment of error, appellant asserts that the trial court erred in finding on summary judgment that there was no fiduciary relationship between Sammy and Infocision.

**{¶24}** It is well-established that in cases alleging professional negligence constituting breach of fiduciary duty, such as the present case, it must be established that a special confidence and trust was placed in the defendant such that the defendant was in a position of superior influence due to the special trust. *Horak v. Nationwide Ins. Co.*, 9th Dist. Summit No. CA-23327, 2007-Ohio-3744, ¶ 31.

**{¶25}** We note that the record shows that Thompson, appellant's vice-president of finance, formerly served as a licensed insurance agent, including having been previously licensed to sell insurance on behalf of appellee Farmers. The record further shows that both Thompson

and Sammy were engaged in the process of researching potential alternative liability coverage upon appellant's failure to accept Progressive's premium increase for liability coverage for non-owned vehicles.

{¶26} The record is devoid of any objective or compelling evidence in support of the notion that appellees were ever placed by appellant in a position of superiority in connection to the issue of liability coverage for appellant's employees traveling in non-owned vehicles on company business. On the contrary, the record reflects that the five-year liability insurance coverage lapse underlying this case occurred as a direct result of appellant not deeming coverage options to be acceptable and not securing acceptable alternative coverage. Wherefore, we find appellant's second assignment of error not well-taken.

{¶27} In the third assignment of error, appellant asserts the trial court erred in determining on summary judgment that appellant's claims are time barred by the applicable four-year statute of limitations set forth in R.C. 2305.09.

{¶28} The Ohio Supreme Court has clearly established that even in discovery rule and delayed damages assertion scenarios, claims of professional negligence remain governed by R.C. 2305.09. It requires such cases to be filed within four years from the time the disputed action was committed. *Flagstar Bank v. Airline Union's Mtg. Co.*, 128 Ohio St.3d 529, 947 N.E.2d 672, 2011-Ohio-1961.

{¶29} The record in this case demonstrates that the conduct of appellees allegedly constituting professional misconduct commenced no later than May 2004. The record reflects that this matter was not filed until June of 2009. Separate and apart from our determination that appellant's claims fail as a matter of law due to primary assumption of the risk applicability, we find that appellant's filing of this case more than five years after it became aware that it no

longer had liability coverage for non-owned vehicles being driven by employees on company business constituted a failure to adhere to the applicable filing deadline established by R.C. 2305.09. Wherefore, we find appellant's third assignment of error not well-taken.

{¶30} Lastly, given our determination that appellant is barred from recovery pursuant to the doctrine of primary assumption of the risk underlying this case, we likewise conclude all contingent claims of vicarious liability against Farmers thereby fail as a matter of law.

{¶31} Wherefore, the judgment of the Summit County Court of Common Pleas is hereby affirmed in its entirety. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

                                            _____

                                            THOMAS J. OSOWIK
                                            FOR THE COURT

SINGER, J.
YARBROUGH, P. J.
CONCUR.

(Judges Arlene Singer, Thomas J. Osowik, and Stephen A. Yarbrough, Sixth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.)

APPEARANCES:

DAVID P. BERTSCH, Attorney at Law, for Appellant.

JAMES M. ROBER, Attorney at Law, for Appellees.

THOMAS F. GLASSMAN, Attorney at Law, for Appellee.